# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MARTIN L. KENT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KEVIN N. HENNELLY, )<br>)<br>Defendant. ) | No. 2:17-CV-188 |

## MEMORANDUM OPINION

Martin Kent brings this action against Kevin Hennelly alleging libel, defamation, and false light invasion of privacy. Kent's allegations arise from three allegedly defamatory posts, two on Facebook and one website comment on a news article, all posted in South Carolina. Before the court is Hennelly's motion to dismiss for lack of personal jurisdiction. Because the complaint does not contain any allegations tying this case to Tennessee and no allegations regarding minimum contacts by Hennelly, the motion is granted and this action dismissed.

### I. Background

Martin Kent is a citizen and resident of Sullivan County, Tennessee. Kevin Hennelly is a citizen and resident of Bluffton, South Carolina.

Kent is the President of the United Company, a Virginia corporation, with its principal place of business in Bristol, Virginia. United is the parent company of Scratch

Golf, LLC, a South Carolina limited liability company that owns Hilton Head National Golf Course in Beaufort County, South Carolina.

In July 2016, Scratch Golf applied to the Beaufort County government to have the golf course rezoned as part of a plan to redevelop the property. The rezoning application became a topic of public discussion.

On May 12, 2017, the Island Packet, a news organization in Bluffton, South Carolina, published a written biography of Kent's life. The biography described Kent as the President of Hilton Head National's parent firm, the United Company; a former top deputy in the administration of Virginia's first governor convicted of a felony; and the only boy raised among sisters and cousins on an 800-acre family farm in southern Virginia. The biography further detailed Kent's college education in Richmond, Virginia; employment as an accountant with the Virginia State Corporation Commission; employment as an attorney with the Virginia Attorney General; employment as Virginia Governor Bob McDonnell's Chief of Staff; and his move to Bristol, Tennessee, where he went to work for United Company at its Bristol, Virginia headquarters.

Later, Hennelly published on his Facebook account, a link to a 2013 Washington Post article headlined "Virginia governor's wife was paid $36,000 as consultant to coal philanthropy." The article was published in the Virginia Politics section of the Washington Post on June 2, 2013. Along with the link, Hennelly commented, "A little something the island [sic] Packet overlooked."

On May 12, 2017, the Island Packet published an article about United's attempts to redevelop Hilton Head National Golf Club. The article reported Scratch Golf's efforts to

redevelop the golf course, quoted Kent on United's justification for the project, and described Kent as a "Virginian" who "joined the United Company . . . following stints working in private practice and for the Virginia state government in Richmond. His career in government peaked when he was tapped to serve as chief of staff for former Virginia Gov. Bob McDonnell." The article also said "Kent . . . lives and works near Bristol, VA, where the United Company is headquartered."

On May 14, 2017, Hennelly commented on the redevelopment article, stating "It looks like they left out a few pertinent facts. The most glaring is the corrupt people involved." In reference to Kent and James McGlothlin, United's founder and CEO, Hennelly commented:

> These guys are crony capitalists and will break every rule in the book to get a government favor or handout. Let's vote NO to zoning change and send these carpetbaggers packing. Let's tell them loud and clear our elected officials are not for sale and are above reproach. Let's support our honest elected officials and send these crooks back to Bristol, Virginia.

At a public meeting on May 22, 2017, the Beaufort County Council denied Scratch Golf's rezoning application. That same day, Hennelly published comments to his Facebook account that Kent was a "crooked owner who wanted a government handout," engaged in "Crony Capitalism," is a "crook" from Virginia, Kent, as owner/operator of United, engaged in "documented corruption," and Kent was "up to his eyeballs in the recent scandals in Virginia with the Governor and his wife. McGlothlin gave the Governor's wife a no show job at the heart of the ethical [sic] and criminal activity."

3

Kent avers Hennelly published his statements on Facebook, making the representations available to untold numbers of people and entities, including those in Bristol, Tennessee, where Kent resides. Kent alleges damages to his character, reputation, and standing in Bristol, Tennessee, as a result of Hennelly's libel. Kent says Facebook currently has over 2 billion monthly active users, more than 3 million of whom live in Tennessee. A public post on Facebook is published to all Facebook users and is available to internet users in Tennessee.

Hennelly argues that none of the posts were directed towards individuals in Tennessee or were sent to individuals in Tennessee and, in fact, regarded proposed rezoning of real property located in South Carolina. Other than Kent's state of residence, there is no allegation in the complaint of any connection to Tennessee. Hennelly states there are no allegations that he targeted Tennessee residents or that he personally had any systematic or minimum contacts with Tennessee to establish personal jurisdiction over him.

### III. Analysis

**A.      Personal Jurisdiction**

Hennelly moves the court to dismiss him from this action pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) due to lack of personal jurisdiction over him.

A district court may dismiss a complaint for lack of personal jurisdiction upon motion of a party. Fed.R.Civ.P. 12(b)(2). In response to such a motion, the plaintiff bears the burden of proving that the court's exercise of personal jurisdiction is proper by a preponderance of the evidence. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212,

1214 (6th Cir. 1989). In the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings, but must, "by affidavit or otherwise, set forth the specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Hennelly avers he has no business or personal contacts with the State of Tennessee, and he has been a resident of and domiciled in the State of South Carolina where the underlying facts in this case took place, since 2011. Hennelly's only contact with Tennessee in the last ten years has been three days spent in Nashville in 2016 to attend the Vanderbilt versus South Carolina football game. Kent bears the burden of demonstrating that personal jurisdiction exists. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). A district court may decide to rule on the jurisdictional issue upon a full trial record, after an evidentiary hearing, or merely on the basis of a written record. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980). This matter has been fully briefed by the parties and affidavits and exhibits have been filed. There is no need for an evidentiary hearing in this matter and the motion will be decided on the record.

When a court decides the issue on the basis of the written record alone, plaintiff needs only to make a *prima facie* case of jurisdiction. To survive a motion to dismiss, plaintiff needs only to "demonstrate facts which support a finding of jurisdiction." *Id.* The burden on plaintiff is relatively slight. The court considers the pleadings and affidavits in the light most favorable to the plaintiff. Any conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (the court does not consider facts

5

proffered by the defendant that conflict with those proffered by the plaintiff); *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (a court disposing of a Rule 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal). Dismissal under Rule 12(b)(2) is proper only if the specific facts alleged by plaintiff, taken as a whole, fail to state a *prima facie* case for personal jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003). Thus, as long as the plaintiff is able to "demonstrate facts which support a finding of jurisdiction," the motion to dismiss will be denied, even in the face of controverting evidence presented by the moving party. *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989).

Kent alleges federal jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship. In diversity cases, federal courts apply the substantive law of the forum state to determine whether personal jurisdiction exists over a defendant, subject to constitutional limitations. *Aristech Chem. Int'l Ltd. V. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998). The court must determine that a defendant comes within the boundaries of the state's long-arm statute as well as the requirements of constitutional due process. *Id.* Under the Tennessee long-arm statute, a federal court is permitted to exercise jurisdiction over a defendant if such jurisdiction is within the boundaries of constitutional due process. *Chenault v. Walker*, 36 S.W.3d 45, 52 (Tenn. 2001). Where a state long-arm statute extends to the limits of constitutional due process, the court need only determine whether exercising personal jurisdiction over the defendant would violate constitutional due process. *Artistech*, 138 F.3d at 627.

In order for a non-resident defendant to be subject to the jurisdiction of a court, the defendant must have "certain minimum contacts . . . such that the maintenance of a suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A defendant's minimum contacts with the forum state may create two types of personal jurisdiction, general or specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 748 (2014).

General jurisdiction over a defendant exists where the defendant's contacts with the forum state are "continuous and systematic" such that a defendant should "reasonably anticipate being haled into court there." *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. 408 U.S. 408, 416 (1984). General jurisdiction allows a defendant to be sued in the forum state even where the cause of action has no relation to the contacts that the defendant has made in that state because the defendant is essentially "at home" in the forum state. *Id*. Here, the complaint alleges that Hennelly is a citizen and resident of Beaufort County, South Carolina, and has caused harm to plaintiff. Kent has not asserted any facts supporting the existence of general jurisdication in the Eastern District of Tennessee. Therefore, the court will analyze whether specific jurisdiction exists over Hennelly in this court.

Specific jurisdiction allows a defendant to be sued in the forum state only where the issues of the suit derive from or are connected to the contacts that establish jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). The existence of specific jurisdiction is determined by looking at the relationship among the defendant, the forum, and the litigation. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770,

775 (1984). For a court to exercise specific jurisdiction that is consistent with constitutional due process, the defendant's "suit-related conduct must create a substantial connection with the forum state." *Walden v. Fiore*, 134 S. Ct. 115, 1121 (2014).

The Sixth Circuit has established a three-part test to determine whether the court may exercise specific jurisdiction over a particular defendant. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over defendant reasonable. *Southern Machine Co. v. Mohasco Indus. Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### 1. Purposeful Availment

The purposeful availment requirement is considered the most important requirement. *Id.* The defendant must have purposefully availed himself of the "privilege of acting in the forum state or causing a consequence in the forum state." *Id.* Requiring that the defendant take purposeful steps in the forum state ensures that a defendant's "random, fortuitous, or attenuated" contacts with the forum state will not subject it to being haled into court there. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985). Additionally, the defendant's relationship with the forum state must arise out of the contacts that the *defendant itself* created with the forum state. *Id.* The unilateral activity of the plaintiff or a third party cannot be the basis of exercising personal jurisdiction over the defendant. *Id.* Although not decisive, the plaintiff or third party's contacts with the forum state may be

significant or important to the due process analysis because the defendant's contacts with the forum state may be intertwined with the transactions with the plaintiff or third party. *Walden*, 134 S. Ct. at 1122.

Kent alleges Hennelly is subject to personal jurisdiction in Tennessee because he intentionally directed his "libel" at Kent, a Tennessee resident, and published it to his Facebook account, which was accessible in Tennessee. Thus, under the Tennessee long-arm statute, a non-resident is subject to the jurisdiction of Tennessee courts if the non-resident intentionally directs defamatory and libelous internet comments at a Tennessee resident, causing the Tennessee resident to suffer harm as a result of the internet messages. *See Hibdon v. Grabowski*, 195 S.W.3d 48 (Tenn.Ct.App. 2005).

In the context of defamation actions arising out of internet posts, the majority of federal courts have held that the "mere posting of information or advertisements on an internet website does not confer nationwide personal jurisdiction. *See Remick v. Manfredy*, 238 F.3d 248 (3rd Cir. 2001); *Burdick v. Superior Court*, 233 Ca.App.4th 8 (Cal.Ct.App. 2015); *Gorman v. Jacobs*, 597 F.Supp.2d 541 (E.D.Pa. 2009); *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002). These cases require, in addition to intentional conduct causing harm to a forum resident, evidence the nonresident defendant expressly aimed or intentionally targeted his intentional conduct at the forum state. *Burdick v. Superior Court*, 233 Cal.App.4th at 24.

Here, Hennelly does not mention Tennessee in his posts and the posts were not related to any issue pending in Tennessee, but rather to real property located in South Carolina. Hennelly's posts did not concern any Tennessee-related activities by Kent. The

9

intended audience of Hennelly's posts was not anyone in Tennessee but rather the Beaufort County, South Carolina community considering whether to allow rezoning for the Hilton Head National Golf Course located in South Carolina.

Even viewing the facts in the light most favorable to Kent, he has not shown that Hennelly had any Facebook friends in Tennessee, nor has he shown that Hennelly directed his Facebook posts to residents of Tennessee. Instead, the record shows that Hennelly directed his comments to citizens and government officials in Beaufort County, South Carolina responsible for making the decision regarding rezoning of the golf course. The court finds the alleged tortious conduct did not occur in Tennessee. Accordingly, the complaint does not satisfy the purposeful availment test.

Kent relies on the *Hibdon* decision to establish personal jurisdiction, but the facts of *Hibdon* are easily differentiated from this case. In *Hibdon*, the defendants personally directed many of their internet messages to residents of Tennessee. *See Hibdon*, 195 S.W.3d at 71. In contrast, Hennelly's comments were directed to residents of Beaufort County, South Carolina. Hennelly's comment posted to the Island Packet demonstrates that the commentary is political speech and directed at Beaufort County, South Carolina officials. The proper question is not "where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Hennelly's relevant conduct occurred entirely in South Carolina, and the mere fact that his conduct allegedly affected Kent in Tennessee does not suffice to authorize jurisdiction here.

## 2. Arising From

The second criterion under *Southern Machine* asks whether the plaintiff's claims "arise from" the defendant's contacts with Tennessee. *Southern Machine*, 401 F.2d at 381. The Sixth Circuit has observed that the "arising from" prong is met when the operative facts arise from the defendant's contacts with the state. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). Here, because Hennelly has not engaged in any activities in Tennessee or have contacts with the State of Tennessee that relate to the claims presented, an exercise of specific personal jurisdiction over him would be inappropriate. *See Burger King*, 471 U.S. at 475 (emphasizing that personal jurisdiction must be based on "actions by the defendant himself that create a substantial connection with the forum").

## 3. Reasonableness

The third prong of the *Southern Machine* test requires that the exercise of personal jurisdiction over the defendant in the forum state must be reasonable. *Southern Machine*, 401 F.2d at 381. This requires the court to consider whether the exercise of personal jurisdiction over defendant comports with "fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 320. Relevant factors include the burden on the defendant, the interests of the forum, and the plaintiff's interest in obtaining relief. *Asahi Metal Indus. Co. V. Superior Court of California*, 480 U.S. 102, 113 (1987).

Here, Kent does not address any of these factors, instead, he argues jurisdiction is proper under the "effects test" of *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 7790 (1984) and *Calder v. Jones*, 465 U.S. 783 (1984). In *Keeton*, the Supreme Court found personal jurisdiction was proper based on Hustler Magazine's sales of 10,000 to 15,000 copies per

month in New Hampshire. Further, the Court found magazine sales were directed at the State of New Hampshire. That is not case here. Hennelly merely expressed his opinion on articles posted by a news source and on his Facebook page directed to Beaufort County, South Carolina officials.

The *Calder* case involved an article published by the National Enquirer about a professional entertainer who lived in California. At the time the suit was filed, the National Enquirer circulated approximately 600,000 newspapers per week in California. The Supreme Court found that the actions of defendants were expressly aimed at California; thus, defendants could reasonably anticipate being haled into court in California. *Calder*, 465 U.S. at 790. Here, Hennelly could not reasonably anticipate being sued in a Tennessee court. The court concludes that Hennelly does not have sufficient internet contacts with Tennessee to permit this court to exercise specific jurisdiction over him. Accordingly, the motion to dismiss is **GRANTED**.

**B. Venue**

As alternative relief, Kent asks the court to transfer this action to a venue that the court deems more appropriate. However, Kent does not suggest a court that would be more appropriate. The burden is on the moving party to establish the need for a change of venue. *Gomberg v. Shosid*, 2006 WL 1881229 at *10 (E.D.Tenn. 2006). Kent has failed to meet his burden and the court is not obligated to make his argument for him. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the

most skeletal way, leaving the court to . . . put flesh on its bones." *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995). Accordingly, Kent's request for change of venue is **DENIED.**

### IV. Conclusion

In light of the foregoing discussion, Hennelly's motion to dismiss [R.11] is **GRANTED**, and this action is **DISMISSED.**

_____
**UNITED STATES DISTRICT JUDGE**